UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DIAMOND,                                         Case No. 14-14341

               Plaintiff,                         John Corbett O'Meara
v.                                                    United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                      Michael Hluchaniuk
                                                      United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 18)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 12, 2014, plaintiff filed the instant suit seeking judicial

review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett

O'Meara referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkts. 16, 18).  The

cross-motions are now ready for report and recommendation.

### B.   Administrative Proceedings

On July 6, 2012, plaintiff filed the instant claim for a period of disability

and disability insurance benefits, alleging disability beginning August 12, 2011.

The Commissioner initially denied plaintiff's application on October 16, 2012.

(Tr. 44-45).  Thereafter, plaintiff requested an administrative hearing, and on June

12, 2013, he appeared with counsel before Administrative Law Judge ("ALJ")

Kim S. Nagle, who considered his case de novo.  (Tr. 46-91).  In a June 27, 2013

decision, the ALJ determined that plaintiff was not disabled within the meaning of

the Social Security Act.  (Tr. 18-44).  The ALJ's decision became the final

decision of the Commissioner on September 12, 2014, when the Social Security

Administration's Appeals Council denied plaintiff's request for review.  (Tr. 1-6).

Plaintiff filed this suit on November 12, 2014.  (Dkt. 1).

For the reasons set forth below, the undersigned concludes that substantial

evidence supports the ALJ's conclusion that there are jobs that exist in significant

numbers in the national economy that the plaintiff can perform.  The Court

therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt.

16) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 18) be

**GRANTED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff has past relevant work as a customer complaint clerk, account

coordinator, collector, sales representative, sales clerk, and as a security guard.

(Tr. 38-39). The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in any substantial gainful activity since August 12, 2011 (the alleged onset date). (Tr. 23). At step two, the ALJ found that plaintiff had the following severe impairments: depression and asthma. (Tr. 24.) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (*Id.*)

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b) involving occasional postural activities including stooping, kneeling, crouching, crawling and climbing. He can tolerate only occasional exposure to outside atmospheric conditions (weather), however, he cannot withstand temperature extremes, and he must avoid all exposure to pulmonary irritants, such as fumes, odors, dust, and gases. The claimant is restricted to simple, routine, repetitive work tasks in low stress jobs, defined as work requiring only occasional decision making, and occasional changes in the work setting. Socially, the claimant can only have occasional interaction with others, including supervisors, co-workers and the general public.

(Tr. 27). At step four, the ALJ determined that plaintiff was unable to perform any past relevant work as a customer complaint clerk, account coordinator, collector, sales representative, sales clerk, or as a security guard. (Tr. 38-39). Considering

3

plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that the plaintiff could perform.  (Tr. 39-40).  As such, the ALJ concluded that plaintiff had not been under a disability from August 11, 2011, through the date of his decision.  (Tr. 40).

      B.      <u>Plaintiff's Claims of Error</u>

            1.      The ALJ erred in concluding that he was capable of performing substantial gainful activity.

Plaintiff argues that the ALJ committed error at Step Five of the sequential evaluation when she determined that plaintiff had the RFC to perform jobs that existed in the national economy including, cleaner/housekeeper, mail clerk, and electronics worker.  (Tr. 39-40).  First, plaintiff notes that at Step Four, the ALJ concluded that plaintiff "must avoid all exposure to pulmonary irritants, such as fumes, odors, dusts and gases . . ." (Tr. 27).  This is consistent with the State's physical consulting examiner's, Dr. Florence Thomas, finding that plaintiff "should avoid exposure to dusts, fumes, extremes of temperature, and pulmonary irritants as well as gases, pollen and mold." (Tr. 300).  Plaintiff argues that the ALJ presented a hypothetical to the vocational expert ("VE") which indicated that the claimant "should avoid all exposure to pulmonary irritants such as fumes, odors, dusts and gases." (Tr. 86).  In response to this hypothetical, the VE indicated that cashier II, housekeeping, and mail clerk (not in the post office),

were available.  Plaintiff argues, however, that the use of cleaning products would preclude the job of cleaning/housekeeping as "irritants" were used in this job category.  Plaintiff also contends that according to the DOT, an "electronics worker" job would have "occasional" exposure to toxic, caustic chemicals, which was also at odds with the RFC determination.  In sum, plaintiff claims that the main flaw in the ALJ's hypothetical is that it is non-specific, namely it does not describe what "pulmonary irritants" plaintiff would be affected by.  The only description given is "such fumes, odors, dusts and gases."

Plaintiff cites *Nichols v. Comm'r*, 2010 WL 5178069, at *3 (W.D. Mich. Dec. 15, 2010), where a vocational expert asked the ALJ to clarify what was meant by limitations, "noting that there was no such place ('you'd be in a bubble')."  In essence, plaintiff claims, with the hypothetical given, no jobs would exist.  Plaintiff argues that he is plagued by asthma and sets forth a list of specific allergens, irritants, exercise, and smoke that could, according to the American Academy of Allergy, Asthma, and Immunology, exacerbate his condition.  (Dkt. 16, at Pg ID 449-451).  Thus, according to plaintiff, even in the position of mail clerk, a worker could come across "strong odors and sprays of perfume ..." and/or smoke from other employees.  Also, there would be no guarantee that the workplace would be free from mold, dust, gases, fumes, vapors, second-hand smoke, cleaning chemicals, scented personal care products, pests (dust mites,

cockroaches, mice), stress.  Because of the lack of specificity of what would be an irritant to a particular individual, the *Nichols* court remanded the case to the Commissioner for a reevaluation of the environmental limitations applicable to plaintiff.

Plaintiff here argues that if the ALJ wants to rely on the testimony of the VE to carry out her burden of proving that a substantial number of jobs exist that plaintiff can perform, the VE must be given a hypothetical that accurately describes the plaintiff.  Because the hypothetical here did not accurately describe plaintiff, the ALJ lacked substantial evidence to conclude that plaintiff could perform the jobs outlined by the VE.

Plaintiff asks the court to reverse the Commissioner's decision denying his disability insurance benefits, or, in the alternative, for a Sentence Four remand.

C.      Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ did not err when she concluded that plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy.  (Dkt. 18, at Pg ID 471-479).  The Commissioner contends that plaintiff's sole challenge to the ALJ's conclusions – that the jobs identified by the vocational expert do not fully accommodate his asthma-related environmental limitations – is unavailing.  (*Id*.)

First, the Commissioner argues that it is hardly apparent that the vocational

6

expert did not understand the ALJ's second hypothetical question.  In response to the ALJ's first hypothetical, the VE identified three jobs (cashier, cleaner, and mail clerk), which provided for frequent exposure to pulmonary irritants, together with the limitations ultimately included in the RFC assessment (except for social limitations).  (Tr. 85-86).  When the ALJ posed the second hypothetical, which instead provided for no exposure to pulmonary irritants, as well as a requirement to avoid temperature extremes, and more than occasional exposure to weather, but was otherwise identical to the first hypothetical, the VE immediately testified that the same jobs would remain available, in the same numbers.  (Tr. 86).  The Commissioner argues that there is no place in the transcript which indicates that the VE misunderstood or underestimated these additional limitations.  The VE changed her testimony only when plaintiff's counsel added a limitation to occasional social interaction, when the VE eliminated the cashier job.  (Tr. 87-88).  Additionally, before identifying a third job (electronics worker), the VE asked for clarification from the ALJ, seeking confirmation that the job could not involve exposure to heat or cold.  (Tr. 88).  That the VE did not also ask the ALJ to repeat all of the other limitations from the second hypothetical does not necessarily imply that she disregarded them, as plaintiff suggests.  Moreover, the Commissioner contends that if plaintiff believed that the VE misunderstood the extent of the limitations, he could have sought clarification at the hearing, but he failed to do

7

so.

Second, the Commissioner argues that the ALJ was not required to further specify what pulmonary irritants plaintiff needed to avoid, beyond what was provided: "fumes, odors, dusts, and gases." (Tr. 86). Indeed, plaintiff acknowledges that the ALJ's environmental limitations are similar to those expressed by Dr. Thomas, except that Dr. Thomas also recommended avoiding exposure to smoke, grass, pollen, and mold. (Tr. 300). And, plaintiff has not pointed to any evidence that the jobs identified by the VE would expose plaintiff to any of these additional irritants.

Moreover, the Commissioner argues that plaintiff's attempt to equate this case with *Nichols v. Comm'r*, 2010 WL 5178069 (W.D. Mich. Nov. 18, 2010), is unavailing. First, the RFC assessment in *Nichols* was not supported by substantial evidence. There, a state agency physician opined that the claimant should avoid all exposure to pulmonary irritants, whereas the ALJ concluded that the claimant could tolerate moderate levels, without providing any reasoning for adopting the lesser limitation. *Id.* at *3-4. Here, by contrast, the Commissioner argues that the ALJ adopted environmental limitations consistent with Dr. Thomas's opinion, and even more restrictive than those identified by state agency physician, Dr. Mahmood. (Tr. 37, 201, 300). Moreover, the VE in *Nichols* testified that no jobs would be available to an individual who had to avoid exposure to all irritants,

8

stating that such a person would "be in a bubble," and the ALJ disregarded this testimony without explanation.  In this case, the VE offered no such testimony. Further, the VE in *Nichols* identified a total of only 7,000 available jobs, and the court expressed concern that "different environmental restrictions could erode this job base to the point where there is no substantial gainful employment that [the claimant] could perform in the national economy."  *Id.* at *4.  In this case, however, the VE identified a total of 45,000 jobs statewide and over one million jobs nationally.  (Tr. 86, 88).

Plaintiff's final challenge, that the jobs identified by the VE are inconsistent with his RFC, is also unavailing.  Specifically Ruling 00-4p provides that the occupational evidence provided by a VE should "generally" be consistent with the Dictionary of Occupational Titles (DOT), that the ALJ should confirm that the testimony is consistent, and that when there is an "apparent unresolved conflict" between the VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony.  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The Commissioner contends that because this responsibility only arises when a conflict is "apparent," an ALJ is not required to independently confirm that a VE's testimony is consistent with the DOT when a claimant fails to bring a potential discrepancy to the ALJ's attention. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).

The Commissioner contends that with respect to the specific jobs identified, plaintiff fails to demonstrate any apparent conflict that the ALJ failed to resolve, and any conflict plaintiff attempts to suggest, at most, would result in harmless error.  With respect to the cleaner/housekeeper job, the Commissioner argues that the DOT job description does not even reference cleaning products, and it further indicates that toxic chemicals and other environmental conditions are not present. DOT #323.687-014, 1991 WL 672783.  As such, the Commissioner avers that plaintiff has established no error.

The Commissioner also says that plaintiff failed to establish any conflict between the VE's testimony regarding the mail clerk position and the DOT.  At most, the plaintiff speculates that "even in a mail clerk position, the worker can come across 'strong odors and sprays such as perfumes' and/or smoke from other employees," and that "[t]here would be no guarantee that the work place would not have 'mold' or 'house dust or dust mites.'" The Commissioner indicates that plaintiff cites a list of potential asthma triggers (Pl.'s Br. 15), however, this list does not appear in the record of the case.  Moreover, the DOT's summary of this job indicates that toxic caustic chemicals and other environmental conditions are not present.  DOT #209.687-206, 1991 WL 671813.  Again, there is no error.

Finally, the Commissioner argues that even though there does appear to be conflict between the DOT job description and the VE's testimony in the

electronics worker job, plaintiff's counsel never alerted the ALJ to this discrepancy, and in any event, this one inconsistency is not fatal to the ALJ's conclusion.  Any error relying on this job was harmless because even if all electronics jobs were excluded (16,000 statewide, and 229,000 nationally), the total number of jobs in the cleaner and mail clerk positions would still constitute a significant number of jobs, both statewide and nationally (22,5000 statewide and over one million nationally).  *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) ("Even if we agree that the ALJ's finding included jobs precluded by [claimant's] exertional and non-exertional limitations, the ALJ's count of 2000 jobs [for one position] available in the third category withstands [claimant's] challenge."); *accord Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs locally is significant); *Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (same; 1,350 jobs locally); *see also Bradley v. Comm'r of Soc. Sec.*, 40 F. App'x 972, 972 (6th Cir. 2002) (170,000 jobs nationally is significant); *Nash v. Sec'y of Health & Human Servs.*, No. 94-5376, 1995 WL 363381, at *3 (6th Cir. June 15, 1995) (same; 70,000 jobs nationally).

    Accordingly, the Commissioner contends that plaintiff failed to establish any reversible error the ALJ committed by relying on the VE's testimony, or in her ultimate conclusion that plaintiff could perform jobs existing in significant numbers national economy.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

12

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

14

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.  Analysis

Plaintiff's main argument is that substantial evidence does not support the ALJ's determination that he can perform jobs existing in significant numbers in

17

the national economy.  Specifically, plaintiff argues that the jobs identified by the vocational expert (cleaner/housekeeper, mail clerk, and electronics worker, Tr. 39-40) did not fully accommodate his asthma-related environmental limitations.  For the reasons that follow, the undersigned affirms the ALJ's conclusion that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  The rule that a hypothetical question must accurately portray all of claimant's physical and mental limitations does not divest the ALJ of her obligation to assess credibility and determine the facts.  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x. 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)).  In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible.  *Id.* (citing *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir.1993)).  An ALJ is not required to accept a claimant's subjective complaints, and can present a hypothetical to the VE on the basis of his own reasonable assessment of the testimony and other

18

evidence. *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). In the view of the undersigned, the RFC assessment and the related hypothetical questions posed to the VE accurately portray plaintiff's physical and mental impairments and thus provide substantial evidence to support the ALJ's non-disability finding. Plaintiff's assertions to the contrary (that the second hypothetical was deficient because it did not fully accommodate plaintiff's asthma-related environmental limitations) are not supported by the medical evidence of record, nor credible lay testimony. The undersigned finds significant the fact that the environmental limitations at issue were similar to those expressed by State examiner, Dr. Florence Thomas. While Dr. Thomas specifically indicated that plaintiff should avoid exposure to smoke, grass, pollen, and mold, the undersigned agrees with the Commissioner that plaintiff has not identified any evidence suggesting that the jobs identified by the VE would expose plaintiff to these irritants. Additionally, the undersigned agrees with defendant that plaintiff has waived any argument he may have had that the jobs identified by the VE failed to account for all of his environmental limitations by failing to raise this issue at the hearing. *Hare v. Comm'r of Soc. Sec.*, 37 Fed. App'x. 773, 777 (6th Cir. 2002).

Moreover, even if plaintiff had not waived this argument, the undersigned concludes that any error with respect to the inconsistency between the RFC and

DOT was harmless. First, it does not appear that plaintiff has identified any
inconsistencies between the RFC and DOT with respect to the
cleaner/housekeeper and mail clerk jobs. With respect to the electronics worker,
the DOT job description mentions "cleaning devices, solutions, and abrasives,"
and indicates that toxic, caustic chemicals are present occasionally. DOT#
726.687-010, 1991 WL 697633. While the undersigned agrees that there appears
to be inconsistency between the RFC and DOT, any error in this regard is
harmless. Indeed, even if the electronics worker job were excluded from the total
number of jobs available, as noted by the Commissioner, the cleaner/housekeeper
and mail clerk jobs would still constitute a significant number of jobs, both locally
and nationally (22,500 statewide and over one million nationally). For this
additional reason, the ALJ's ultimate conclusion that the plaintiff could perform
jobs that exist in significant numbers in the national economy is supported by
substantial evidence.

The Commissioner convincingly establishes that the ALJ's RFC is
well-supported by substantial evidence and that plaintiff's credible limitations
were accommodated in the RFC. Plaintiff simply fails to explain how the ALJ's
RFC does not accommodate his credible limitations, as found by the ALJ, which
are fully supported by substantial evidence in the record. Moreover, simply
because plaintiff suffers from a certain condition or carries a certain diagnosis

does not equate to disability or a particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from-though his maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004).  "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.  Here, plaintiff seemingly argues that merely because he suffers from asthma, he must be disabled.  This is not so.  And, significantly, plaintiff has failed to produce medical evidence or an opinion showing that he had greater limitations than the ALJ found. *See Maher v. Sec'y of Health & Human Servs.,* 898 F.2d 1106, 1109 (6th Cir.1987) (citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned concludes that substantial evidence supports the ALJ's conclusion that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.  As such, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 16) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 18) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation

to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).   The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 22, 2015                        s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on December 22, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov

23